UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DOUBLE J. MARINE, LLC | CIVIL ACTION |
| v. | 13-5825 |
| MATTHEW NUBER | SECTION "F" |

ORDER AND REASONS

Before the Court is Double J. Marine, LLC's motion for summary judgment to declare the Receipt, Release, and Hold Harmless Agreement executed by Nuber valid and enforceable. For the reasons that follow, Double J.'s motion for summary judgment is DENIED.

Background

This declaratory judgment action arises out of personal injuries sustained by Matthew Nuber while he was working in the course and scope of his employment with Double J. Marine, LLC.

On March 8, 2013, while working as a deckhand for Double J. aboard the M/V MISS KAYLYNN, Nuber hurt his back while pulling on a face wire. That same day, Nuber sought treatment for his injuries at River Parishes Hospital. An emergency room physician diagnosed Nuber with a pulled muscle, determined he was unable to work, and directed him to return in a week for a follow-up appointment. On March 19, 2013, Nuber returned to River Parishes Hospital, where he was treated by a second emergency room physician who determined that he was able to return to normal work duties and discharged him. Nuber did not receive any diagnostic testing, such

-1-

as an X-ray or an MRI, and was not referred to a specialist.

Later in the day on March 19th, Nuber executed a Receipt, Release, and Hold Harmless Agreement. Before signing the release, Nuber met with Philip Stains, a claims adjuster, at the Race Track gas station in LaPlace, Louisiana. Staines read and explained the terms of the release to Nuber, and Nuber indicated that he understood and agreed to those terms. By signing the release, Nuber relinquished all of his claims against Double J. in connection with the March 8th incident in exchange for $530 in consideration.[1]

Nuber returned to work with Double J. the next day. About a month later, he began experiencing back pain again. Double J. placed Nuber on light duty, until he could no longer continue working. On May 9, 2013, Double J. voluntarily offered for Nuber to be examined by an orthopedist. Nuber saw Dr. Nutik, who ordered an MRI, diagnosed Nuber with herniated discs, and recommended surgery. Dr. Nutik linked Nuber's injury to the March 8th incident.

After visiting Dr. Nutik, Nuber made a demand for continuance of maintenance and cure benefits, notwithstanding the March 19th release.[2] On September 13, 2013, Double J. Marine filed a Complaint for Declaratory Judgment in this Court, seeking a

---

[1] Double J. also paid Nuber $330 in past due benefits.

[2] Nuber alleges that Double J. has refused all benefits; however, Double J. claims it has continued paying maintenance under protest.

determination of its obligations regarding the payment of maintenance and cure benefits to Nuber.  On October 30, 2013, Nuber filed a Seaman's Complaint against Double J. Marine in the 40th Judicial District Court for the Parish of St. John the Baptist, alleging negligence and unseaworthiness and seeking maintenance and cure.  Double J. now moves this Court for summary judgment to declare the Receipt, Release, and Hold Harmless Agreement executed by Nuber valid and enforceable.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment

is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

"Seamen are wards of admiralty law, whose rights federal courts are duty-bound to jealously protect." Bass v. Phoenix Seadrill/78, Ltd., 749 F.2d 1154, 1160-61 (5th Cir. 1985)(citation omitted). In protecting their rights, the Court must be "particularly vigilant to guard against overreaching when a seaman purports to release his right to compensation for personal injuries." Id. at 1161. At the same time, however, the Court must balance the utility of maintaining confidence in the finality of such settlements. See Borne v. A&P Boat Rentals No.4, Inc., 780 F.2d 1254, 1257 (5th Cir. 1986)("If employers are denied any degree

-4-

of confidence in the finality of a settlement, seamen will lose the option to settle since employers will have little incentive to avoid a full-scale trial on the merits. Denying seamen that option is no kindness."). In carefully scrutinizing releases or settlement agreements involving seamen, the Court must ultimately determine whether the seaman had "an informed understanding of his rights and a full appreciation of the consequences" of executing the release at the time he executed it. Bass, 749 F.2d at 1161.

The party claiming that the matter has been settled bears the burden of demonstrating that a seaman's release of claims was "executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." Garrett v. Moore-McCormack Co., 317 U.S. 239, 248 (1942). Adequacy of consideration is one factor for the Court to consider in determining whether the seaman had an informed understanding of his rights. See id. However, the Court "lacks authority, especially where the seaman testifies to complete satisfaction, to void the agreement simply because the court thinks the seaman could have negotiated a better deal." Bass, 749 F.2d at 1162. Another factor the Court considers in determining whether the seaman had an informed understanding of his rights is the nature of medical and legal advice available to him. Garrett, 317 U.S. at 248; Borne v. A&P Boat Rentals No.4, Inc., 780 F.2d 1254, 1256-57 (5th Cir. 1986)(noting that whether the competency of counsel or adequacy of

legal or medical advice is questioned is one factor to consider in determining the validity of a seaman's release of claims).  In this regard, a seaman "may have to take his chances" that a properly diagnosed condition is "more serious and extensive than originally thought."  Robertson v. Douglas S.S. Co., 510 F.2d 829, 835 (5th Cir. 1975); see also Durley v. Offshore Drilling Co., 288 F. App'x 188, 191 (5th Cir. 2008).  Other factors the Court considers include whether the parties negotiated at arm's length and in good faith, and whether there is the appearance of fraud, deception, coercion, or overreaching.  Borne, 780 F.2d at 1256-57.

Double J. contends that the record establishes that, at the time of releasing his rights, Nuber had an informed understanding of his rights and a full appreciation of the consequences.  The Court disagrees.  The record includes, on the one hand, a transcript of the meeting between Nuber and the adjuster in which Nuber indicated that he understood his rights and agreed to release them, and on the other, an affidavit executed by Nuber in which he swears he did not fully understand the ramifications of the release.  That alone creates a genuine issue regarding whether Nuber executed the release freely and with a full understanding of his rights.  Charpentier v. Fluor Ocean Servs., Inc., 534 F.2d 71 (seaman's affidavit alleging overreaching created genuine issue of material fact as to validity of release).

The record also reveals that Nuber has only completed the 10th

grade in special education classes, that he only received $530 in consideration for settlement, and that he was not represented by counsel when he executed the release.  "Although a court may uphold a release even when the seaman is not represented by his own attorney, [the Fifth Circuit] has repeatedly emphasized the importance of counsel in determining whether a seaman fully understood his rights and the consequences of releasing those rights."  Castillo v. Spiliada Mar. Corp., 937 F.2d 240, 246 n.7 (5th Cir. 1991)(citations omitted).  Neither did Nuber receive an independent medical opinion regarding his injuries before executing the release.  Robertson, 510 F.2d at 835.

Double J. contends that the record clearly establishes that Nuber received adequate medical advice.  The Court again disagrees.  The record reveals that, before he signed the release, Nuber was treated twice at River Parishes Hospital where he was diagnosed with a pulled muscle and told to return to work.  The emergency room physicians did not conduct any diagnostic testing, and did not refer Nuber to a specialist.  When Nuber later sought more treatment, Dr. Nutik ordered an MRI, diagnosed Nuber with herniated discs, and recommended surgery.  The record at least reveals a genuine issue regarding the adequacy of the medical advice Nuber initially received, if not a mutual mistake regarding the nature of Nuber's injury.  Id. ("A mistake with regard to diagnosis has long been recognized as cause for setting aside a seaman's release.").

Finally, although Double J. maintains that the parties negotiated at an arm's length and in good faith, the record shows that Nuber signed the release at a gas station on the very same day he received treatment. Double J. has failed to meet its burden of establishing that Nuber signed the release freely, without deception or coercion, and with a full understanding of his rights. Garrett, 317 U.S. at 248.

Accordingly, the motion for summary judgment to declare the release agreement valid is DENIED.

New Orleans, Louisiana, December 11, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE